UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ORANGE ELECTRONIC CO. LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 2:21-cv-240 |
| AUTEL INTELLIGENT TECHNOLOGY CORP., LTD. | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF ORANGE ELECTRONIC CO. LTD'S SUR-REPLY IN OPPOSITION TO DEFENDANT AUTEL INTELLIGENT TECHNOLOGY CORP., LTD.'S MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Autel Intelligent Technology Corp. Ltd.'s ("Autel ITC" or "Autel") Reply misunderstands or misrepresents both the law and facts. Orange has presented sufficient facts to demonstrate that Autel ITC has substantial contacts in the U.S. and in this District. Autel ITC's website provides interactivity with users in the U.S. and this District and therefore is not simply "passive." Autel ITC's last minute concession that personal jurisdiction exists elsewhere does not negate the applicability of the Federal Long Arm Statute under Rule 4(k)(2). Finally, the fact that the contract between Autel ITC and its subsidiary is FOB outside the U.S. does not allow Autel ITC to escape liability as a direct infringer.

## II. ARGUMENT

### A. Orange Provided Evidence of Autel ITC's Dealer's and Customers

Autel ignores the many Marshall-area dealers that Orange cited to in its Opposition, and argues that Orange "fails to name even a single 'dealer; or 'customer' in this District." Reply at 1. See, e.g., Opp. At 7-8; Rabena Decl. ¶ 5; Ex. 3.[1] Approximately 30 of these Marshall area dealers are just from one chain – ABC Auto Parts, and Autel ITC's website points to many other dealer chains in the Marshall area (e.g., O'Reilly Auto, Advance Auto Parts, Carquest, Autozone). Rabena Decl. ¶ 6, Ex. 3. These dealers appear to have contracted with Autel ITC directly via Autel ITC's website, and are therefore also "customers" of infringing sales from Autel ITC. Rabena Decl. ¶ 9, Ex. 6.

### B. Autel ITC's Website is Not "Passive"

Autel ITC argues that its website is "passive" in a transparent attempt to align the facts with its cited cases. But a review of Autel's cited cases shows that Autel's website is not passive; rather, these cases establish that Autel ITC's website is interactive in ways that create direct contacts in this District. For example, Autel cites to *Maynard v. Phila. Cervical Collar Co.*, 18 Fed. Appx. 814 (nonprecedential) and *Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999), but in these cases the websites in question could not interact with users as Autel ITC's website can. In distinguishing *Maynard*, this Court has explained the importance of interactivity in determining whether or not a website is "passive":

> When a defendant's interactions with its contacts in a forum state occur through a website, courts frequently analyze the issue of personal jurisdiction by applying the test

---

[1] Citations to "Rabena Decl." and associated Exhibits refer to the Declaration of John F. Rabena in Support of Plaintiff Orange Electronic Co. Ltd.s Opposition (ECF # 11-1), and the Exhibits listed therein (ECF #11-2 through 11-8).

2

>enunciated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). Under that test, courts "examin[e] the level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine whether the defendant has subjected itself to personal jurisdiction in a state or district where the defendant's customers receive the defendant's messages. *Id*. at 1124. On one end the spectrum, ***personal jurisdiction is most likely to exist where the defendant "clearly does business over the Internet."*** *Id*. On the other end of the spectrum are ***passive*** websites where a defendant "has ***simply posted information***" that customers can access. *Id*. ***In between are interactive websites, where the existence of personal jurisdiction "is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site***."

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 813, 826 (E.D. Tex. 2014) (finding sufficient contacts where defendant's website allowed users to interact with the loyalty program via the website).

Unlike the facts of *Maynard* and *Mink*, Autel ITC's website interacts directly with customers by allowing them to enter their location (e.g., "Marshall Texas") and then listing the many dealers in the Marshall area that sell the accused products.  Rabena Decl. ¶¶ 5-7; Exs. 3, 4. Autel ITC's website also interacts with customers by receiving information about problems the customers are having with the accused products and pointing the customer to a service center "in your region."  Rabena Decl. ¶ 11.  Also unlike *Maynard* and *Mink*, Autel ITC's website interacts directly with prospective dealers by allowing them to apply to become a dealer directly via the Autel ITC website.  Rabena Decl. ¶ 9; Ex. 6.  Thus, the case law is clear that Autel ITC's website is not at all passive, but rather directly interacts with contacts in this District to conduct business related to the accused products.

### C. Rule 4(k)(2) Does Apply

Autel is also wrong in its attempt to dodge the Federal Long Arm Statute.  Fed. R. Civ. P. 4(k)(2) does apply and confer personal jurisdiction, and Autel's Reply ignores the very cases it cites as well as more recent case law that further explains why Autel is wrong.   Relying on

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009), and *ISI Int'l Inc. v. Burden Ladner Gervais LLP*, 256 F.3d 548 (7th Cir. 2001), Autel contends that Rule 4(k)(2) is inapplicable because 1) it was not specifically pled in the Complaint, and 2) because Autel has now, in its Reply, consented to personal jurisdiction in New York. Reply at 5-6.

Both of these arguments fail as explained by the Federal Circuit in *Merial Ltd. v. Cipla Ltd.*, 681 F. 3d 1283, 1294 (Fed. Cir. 2012). First, *Merial* explained that a plaintiff need not plead every basis for personal jurisdiction. In other words, a district court may rely on Rule 4(k)(2) even if it was not specifically pled.

> In general, parties may satisfy federal pleading standards by alleging personal jurisdiction generally, without asserting a specific basis for the court's personal jurisdiction over a defendant. 4 Wright, et al., supra, § 1067.6. Furthermore, ***our precedent holds that Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction.*** See *Touchcom*, 574 F.3d at 1410 ("The court did not examine whether Rule 4(k)(2) permitted the exercise of personal jurisdiction [because the plaintiff] did not allege that that rule permitted the exercise of jurisdiction. However ... ***we are entitled to consider it***."); see also *ISI*, 256 F.3d at 551 ("Although the ***parties did not alert the district judge to Rule 4(k)(2).... Federal courts are entitled to apply the right body of law, whether the parties name it or not.***").

*Merial*, 681 F. 3d at 1296.

Autel's second attempt to dodge Rule 4(k)(2) jurisdiction is that it now, in its Reply brief, concedes to jurisdiction in New York where its subsidiary resides.[2] Reply at 6 ("Here, Autel ITC explicitly states and concedes that its contacts and conduct in New York, where its U.S.

---

[2] It is telling that Autel ITC had its New York subsidiary (Autel US) file a declaratory judgment action alone in Virginia, at the same time Autel ITC now concedes jurisdiction in New York. Apparently Autel's plan is to extricate and keep Autel ITC, the manufacturer of the accused products, out of any lawsuit involving these products, and allow Autel US to play dumb in its Virginia case when it comes to how the accused products were made and operate. The infringement issues in this dispute will likely require depositions of engineer witnesses and production of source code from Autel ITC, a Chinese company. Autel's plan to hinder that discovery is clear from this motion to dismiss the case against Autel ITC, and the declaratory judgment action recently filed by Autel US alone in Virginia.

subsidiary, Autel US, is headquartered, render Autel ITC subject to personal jurisdiction in New York"). The Federal Circuit has also explained the inadequacy of this argument. *Merial*, 681 F. 3d at 1294 ("The district court correctly concluded that Cipla's *ex post* consent to suit in [another jurisdiction] was not independently sufficient to prevent it from exercising personal jurisdiction under Rule 4(k)(2).") In *Merial*, defendant Cipla had even offered declaration and other evidence to support its position that jurisdiction was proper in another court, but the Federal Circuit held that evidence was not sufficient to establish the propriety of the alternate jurisdiction. Here, Autel has offered no such evidence but merely a last-minute bald assertion.

### D. Autel ITC's Direct Infringement Challenge Forgets that Its Subsidiary is a U.S. Customer of Directly Infringing Sales

In its attempt to distinguish the cases cited by Orange on direct infringement, Autel ignores the fact that its U.S. subsidiary is a U.S. customer of Autel ITC, and ignores the law that setting the Autel ITC-Autel US, Inc. sales contract to be FOB outside the U.S. does not negate an infringing offer or sale. Autel relies on *MEMC Elec. Mat'ls, Inc. v. Mitsubishi Mat'ls Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005), for the incorrect proposition that there was no direct infringement because the offer occurred on foreign soil. Reply at 10. But Transocean explains that this was not the holding in the *MEMC* case. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F. 3d 1296, 1310 (Fed. Cir. 2010) ("The *MEMC* case is even further attenuated as it did not even consider location of the offer or the contemplated sale, but instead held there was no offer to sell because the emails at issue, which contained only technical data and no price terms, cannot constitute an offer that could be made into a binding contract by acceptance.")

5

Putting aside for the moment that Autel ITC has not provided its sales agreement or its pre-sale offer communications with its U.S. subsidiary as evidence to this motion, if we take Autel ITC at its word,[3] the offer and the contract to sell to Autel US are both direct infringements under *Transocean*, 617 F. 3d at 1309. In *Transocean*, just like Autel ITC's sales to Autel US, the agreement executed outside of the United States contemplated that the U.S. purchaser would be the one to import the accused product into the United States. *Id*. at 1309 ("Neither *Rotec* nor *MEMC* preclude our determination that an offer by a U.S. company to sell a patented invention to another U.S. company for delivery and use in the U.S. constitutes an offer to sell within the U.S").

Autel ITC is also unable to distinguish other Federal Circuit precedent finding that direct infringement occurs even if the accused products are shipped FOB outside of the U.S. *North American Philips Corp. v. American Vending Sales*, 35 F.3d 1576 (Fed. Cir. 1994) (holding that it would "exalt form over substance" to say that the FOB location determined the location of a sale for purposes of Section 271(a)); *see also*, *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353 (Fed. Cir. 2008) (finding the sale location to be the United States despite the fact that the products were shipped FOB Canada). Autel ITC contends that those cases are different because there "the accused infringer was directly responsible for the relevant U.S. sales directly to customers." Reply at 10. Autel seems to contend that only sales to *end-user* customers can constitute a direct infringement; but that is not the law. Autel forgets that the "customer" in this direct infringement offer and sale from Autel ITC to Autel US, is Autel US, not the ultimate end-user customers. Thus these cases are entirely on point; here, just like these cases, "the accused

---

[3] Which is improper in a motion to dismiss.

infringer [Autel ITC] was directly responsible for the relevant U.S. sales directly to customer[s] [Autel US, Inc.]."

## **CONCLUSION**

For the reasons set forth above, Plaintiff Orange Electronic requests that the Court deny Autel's Motion in its entirety.

/s/ J. Thad Heartfield
J Thad Heartfield
State Bar No. 09346800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, TX 77706
Telephone: 409-866-3318
Facsimile: 409-866-5789
Email: thad@heartfieldlawfirm.com

John F. Rabena
Email: jrabena@sughrue.com
William H. Mandir (admitted *pro hac vice*)
Email: wmandir@sughrue.com
Fadi N. Kiblawi (admitted *pro hac vice*)
Email: fkiblawi@sughrue.com
Young Sun Kwon (admitted *pro hac vice*)
Email: ykwon@sughrue.com
SUGHRUE MION PLLC
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 293-7060
Facsimile: (202) 293-7860

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 25, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ J. Thad Heartfield*
J. Thad Heartfield