■■■■■■■■■■■■■■■■■■■■■■

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ORANGE ELECTRONIC CO. LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> AUTEL INTELLIGENT TECHNOLOGY CORP., LTD., <br><br> *Defendant*. | Case No. 2:21-cv-0240-JRG |

**AUTEL'S RESPONSE TO ORANGE'S POST-TRIAL BRIEF ON "SALES, OFFERS, AND IMPORTATIONS"**

███████████████████████████

The Court has rightly flagged the possibility of an issue of standing in the present lawsuit. *See* Dkt. 166 (Order) at 1. This was a potential problem, but because Orange responded by limiting its allegations to just to those sales made by Autel to Autel U.S. (*see generally*, Orange's Brief, Dkt. 173) outside the United States, not those sales made by Autel U.S. in the United States, a standing issue has been avoided. That is not the end of the story, however, because Orange still has a gaping hole in its case—specifically, the location of the allegedly infringing acts.

Orange's standing to bring this lawsuit is premised solely on sales made by Autel, and therefore the Court's jurisdiction is similarly commensurate with the scope of Orange's standing. Thus, the Court may only adjudicate the sales made by Autel to Autel U.S.—it does <u>not</u> have standing to adjudicate infringement based on Autel U.S.'s subsequent sales in the United States to its customers, as these are sales by a legally distinct entity and no veil piercing has occurred or even been alleged (nor could it be). *See, e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657, 2019 U.S. Dist. LEXIS 98124, at \*5 (N.D. Cal. June 11, 2019) ("In order to hold Micron liable for the sales of non-parties, MLC needs to pierce the corporate veil"); *Confectionary Arts Int'l, LLC v. CK Prods. LLC*, No. 3:16cv2015, 2018 U.S. Dist. LEXIS 34735, at \*14 (D. Conn. March 1, 2018) ("in order for CI to be liable for sales made by CKP, its subsidiary, Plaintiff must pierce the corporate veil of CI"). This means that for purposes of determining direct infringement under 35 U.S.C. § 271(a) (the only theory of infringement after Orange dropped indirect infringement at the pretrial stage), this Court has jurisdiction to adjudicate only those sales made by Autel to Autel U.S.; Orange has not argued or proven otherwise. When the relevant evidence is considered, and the relevant caselaw is properly applied to the record, there is no legally sufficient evidentiary basis for a reasonable jury to find that Autel's sales to Autel U.S. were either made in the United States or sales of the claimed "system."

In circumstances such as these, "JMOL motions [are] a procedurally correct mechanism to challenge the jury findings of infringement based on the location of the allegedly infringing activity." *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1366-68 (Fed. Cir. 2008).

For these reasons, and as addressed in Autel's own Rule 50(b) post-trial motion, Orange failed to prove direct infringement.

I. **EVIDENCE DOES NOT SUPPORT THAT THE ACCUSED SALES OCCUR IN THE UNITED STATES, OR THAT AUTEL SELLS THE ACCUSED "SYSTEM"**

    A. **The Cases Cited by Orange Do Not Indicate that Autel has Engaged in Directly Infringing Activity.**

None of the cases cited by Orange (principally *North American Philips Corp.*, *Litecubes*, and *SEB S.A.*) indicate that Autel made the accused sales in the United States. Accordingly, liability for direct infringement as to Autel under 35 U.S.C. § 271(a) cannot be upheld.

While Orange begins its argument by referring to *North American Philips Corp.* (*see* Br. at 3), it quickly pivots to *Litecubes* as "adopting" *North American Philips Corp.*'s reasoning for purposes of Section 271(a), and thereinafter discusses *Litecubes* without further mention of *North American Philips Corp.*. *See generally*, Br. at 3-8. This is fitting, as *North American Philips Corp.* concerned personal jurisdiction only, whereas the present inquiry concerns direct infringement under Section 271(a).[1] The inquiry here is governed by those Federal Circuit cases interpreting Section 271(a).

---

[1] While the Federal Circuit in *Litecubes* saw "no basis for construing the location of a 'sale' differently when the issue is whether the plaintiff has established that the sale took place within the United States for the purposes of infringement" versus for purposes of personal jurisdiction (*see* 523 F.3d at 1370), there is a key distinction between these inquiries inapplicable to the facts in *Litecubes*. Personal jurisdiction is subject to the well-known "stream of commerce" test (*see, e.g.*, *AFTG-TG, LLC v. Nuvoton Technology Corp.*, 686 F.3d 1358, 1362-64, (Fed. Cir. 2012)), but there is no equivalent concept for 35 U.S.C. § 271(a), and indeed application of such a principle would violate the "strong policy against extraterritorial liability [that] exists in the patent law." *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377 (Fed. Cir. 2016) (citing *Microsoft*, 550 U.S. at 455). This distinction did not matter in *Litecubes* where the defendant was not using any

2

Orange's Section 271(a) cases (*Litecubes* and *SEB S.A.*) do not support its position, and equally importantly must be read in the context of the more recent guidance from the Federal Circuit in *Halo*.

First, *Litecubes* differs from the facts being adjudicated here. Specifically, in *Litecubes*, the defendant sold directly to end users in the United States who placed orders with it rather than selling to a distributor—a distinction crucial to that case's resolution at the district court:

> The Court finds that the instant case is easily distinguishable [from cases finding no sales or importation into the United States]. In both *Pfizer* and *Cybiotronics*, the defendant was not an 'importer' because, in each case, an intermediary company was acting as the importer… Here, Defendant took orders for the accused products over the telephone at the number published on its website. Once Defendant received an order from a customer in the United States, the Defendant shipped the product at the direction and expense of the purchaser.

*See Litecubes, L.L.C. v. Northern Light Prods.*, No. 4:04CV00485, 2006 U.S. Dist. LEXIS 60575, at *9 (D. Mo. Aug. 25, 2006) (citing *Pfizer Inc. v. Aceto Corp.*, 853 F. Supp. 104, 106 (S.D.N.Y. 1994); *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*, 130 F. Supp. 2d 1152, 1175-76 (C.D. Cal. 2001)); *see also Litecubes*, 523 F.3d at 1369-71 ("It is uncontested that GlowProducts sold and shipped the allegedly infringing products directly to customers located in the United States.").

*Litecubes* also noted the difference between its circumstances in which "American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States" and an earlier case in which "all of the essential activities" of the sale took place abroad. *See* 523 F.3d at 1371 (distinguishing *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005)).

---

distributor and thus there was no "stream of commerce" at issue, but it is crucial here where a distributor is used. *See infra*.

████████████████████████████████████████

Thus, in *Litecubes*, the Court "rejected the notion that simply because goods were shipped f.o.b., the location of the 'sale' for the purposes of § 271 must be the location from which the goods were shipped," and that was all the evidence or argument put forth by the defendant. 523 F.3d at 1369

Not so here. The undisputed record shows both that Autel only sold the accused product to a distributor—Autel U.S.—and that all of the essential activities of the accused sales took place in China, from the signing of the distribution agreement (Day 3 (6/7/2023) Tr. at 134:19-135:2), to Autel's acceptance of a given order (JX-065.6 (distributorship agreement)), to the actual transfer of title to the products (Day 3 (6/7/2023) Tr. at 133:8-19). Furthermore, the distributor relationship between Autel and Autel U.S. is governed by the laws of China. JX-065.16. And unlike in *Litecubes*, where the defendant made sure that the products arrived at the customer's address following an order placed by phone, here it is Autel U.S. (the distributor) that has final say over shipping modes and methods. *See* JX-065.8 ███████████████████████████████████████████████████████████████████████████████████████████████; Day 3 (6/7/2023) Tr. at 128:15-24 (Ms. Chen's testimony ███████████████████████████████████████████████████████████████████████████████████████████████.

Thus, the facts discussed above show that the f.o.b. designation is not the only fact relevant here, unlike in *Litecubes*. *See generally*, Day 3 (6/7/2023) Tr. at 123:13-16, 124:15-26, 128:11-14, 133:8-19, 134:19-135:2, 138:10-13, 138:19-139:6; JX-065 (distributorship agreement). Moreover, no court (including *Litecubes*) has ever held that an f.o.b. designation is irrelevant to this inquiry—in fact, the inquiry must consider where the "passing of title from the seller to the buyer for a price" occurs. *See Halo*, 831 F.3d at 1377-78; *see also Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 530 F. Supp.

███████████████████

3d 988, 1012-13 (S.D. Cal. March 31, 2021) (considering f.o.b. terms in determining that no sale in the United States occurred).

*SEB S.A.* considered a similar issue to *Litecubes*—as noted by the Federal Circuit, "the only evidence on which [the defendant] relie[d] to argue that its sales occurred overseas was that it delivered its products to [its customers] f.o.b. Hong Kong or mainland China." *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1375 (Fed. Cir. 2010). But again, the f.o.b. designation of the accused sales, while relevant, is <u>not</u> all that Autel has relied upon—the uncontroverted evidence also showed that these sales were negotiated, arranged, shipped, and executed in China.

Thus, the holdings of *Litecubes* and *SEB S.A.* do not counsel a finding of direct infringement in this case. In addition, they must also be read in the more recent context of the guidance of *Halo*. The Federal Circuit in *Halo* acknowledged *Litecubes*, but then also noted that where "the products [] were manufactured, shipped, and delivered to buyers abroad" (as occurred here), there is no cause for infringement under Section 271(a). *Halo*, 831 F.3d at 1377. Notably, where the "substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract, occur entirely outside the United States," infringement has not occurred through those sales. *Id.* at 1378. This is consistent with the "strong policy against extraterritorial liability [that] exists in the patent law." *Id.* at 1377.[2] And here, these considerations support Autel's position.

---

[2] On the issue of where the "substantial activities of a sales transaction" occur, *Litecubes* and *SEB S.A.* must be considered in light of, and consistent with, not only the Federal Circuit's later decision in *Halo*, but also the more recent guidance of the Supreme Court about the extraterritorial application of U.S. intellectual property laws. *See, e.g.*, *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018) (requiring an inquiry about whether "the conduct relevant to [the statute's] focus occurred in United States territory"); *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 2023 U.S. LEXIS 2789, at *3 (U.S. June 29, 2023) ("We have repeatedly and explicitly held that courts must 'identif[y] 'the statute's 'focus'' and as[k] whether the conduct relevant to that focus occurred in United States territory.'").

██████████████████████████████

The totality of the circumstances clearly shows that Autel U.S. purchases the accused products from Autel in China. Section 271(a) is inapplicable because there is no infringing U.S. activity by Autel. Thus, for the sales at issue, Autel U.S. should have been the defendant sued, and indeed there is no indication that it was unavailable for suit. But Orange made a strategic decision not to include Autel U.S. in this case, and must now bear the consequences of that decision.

### B. Orange Fares No Better with Its Theories of Importation and Offers for Sale.

Orange's allegations relating to importation and offers for sale in the United States (*see* Brief at 6-8) fare no better, as neither of these allegations applies to Autel's actions.

First, Autel is an "exporter," not an "importer." *See Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-cv-00373, 2021 U.S. Dist. LEXIS 49101, at *45-46 n.12 (S.D. Cal. March 15, 2021) (finding no importation under Section 271(a) and noting that "if someone buys a product within the U.S. from Asia containing UDE's ICMs, the purchaser would be importing infringing goods, while the seller (whether the seller is a third-party or Defendant) would be exporting the goods"). Autel U.S. causes the products to be shipped to the United States, and Autel U.S. owns the goods when they enter the United States—Autel U.S. is the relevant importer, not Autel.[3]

Furthermore, the "offer for sale" inquiry rises and falls with the location of the sales themselves. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010) ("the location of the contemplated sale controls whether there is an offer to sell within the United States"). For the reasons discussed above, the accused sales did

---

[3] Orange's cited cases regarding importation are inapposite. *Cunard Steamship* concerned illegal Prohibition-era transportation of liquor for use by passengers in U.S. territorial waters. *See* 262 U.S. 100, 119-120 (1923). There is no discernable relevance of this case or its holdings to the present dispute. And *Canton*, albeit a franchise tax case with little relevance, actually supports Autel's position: Autel U.S., not Autel, is the party that is "bring[ing] [the products] into the country." *See* 340 U.S. 511, 515 (1951).

not occur in the United States—any corresponding offers for sale within the meaning of Section 271(a) therefore also did not occur in the United States. There are no facts that would possibly support any other conclusion, and Orange has not alleged any.

Accordingly, Orange's arguments do not succeed under the rubric of importation or offers for sale where they have failed the show that the sales themselves occurred in the United States.

### C. *Litecubes* Does Not Cure Orange's Failure to Point to Sales of the Claimed "System" by Autel.

Even if the Court were to conclude that Autel's knowledge that Autel U.S. was a U.S. company that subsequently sells the products in the United States means that the accused sales occur in the United States—and it should not—this would not cure the deficiency in Orange's proof that Autel's sales (the only sales at issue and within the Court's jurisdiction) are not sales of the infringing "system."

Claims 26 and 27 of the '064 patent claim a "system" comprising both "an identification rewritable tire pressure detector" and "a portable setting apparatus" (JX-029 ('064 patent) at 18). "[A] patent on a combination is a patent on the assembled or functioning whole, not on the separate parts," even if all of the parts are sold by the same entity. *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 528 (1972). Thus, directly infringing sales need to be sales of an accused tool and an accused sensor *as a system*—anything less would merely be a sale of a component of the system.

The sales accused of triggering direct infringement were not sales of the accused system. *See, e.g.,* JX-066.01 (invoice from Autel to Autel U.S. selling tools but not sensors), JX-066.9 (invoice from Autel to Autel U.S. selling sensors but not tools). Orange presented the jury with no evidence that any accused sales by Autel—those within the Court's jurisdiction—were of the entire claimed "system." Thus, even if the accused sales occurred in the United States -- and they did not -- those sales do not trigger infringement under 35 U.S.C. § 271(a).

█████████████████████████████████████

* * *

For the reasons discussed, subject matter jurisdiction and standing do limit the sales at issue in this lawsuit to those made by Autel, not Autel US. The sales by Autel neither occurred in the United States nor were they of the accused "system." Accordingly, Autel is not liable for direct infringement under 35 U.S.C. § 271(a).

Dated: July 24, 2023

Respectfully submitted,

*/s/ Gary M. Hnath*
Gary M. Hnath *(Lead Counsel)*
James A. Fussell, III
Bryan Nese
Clark S. Bakewell
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-5323
ghnath@mayerbrown.com
jfussell@mayerbrown.com
bnese@mayerbrown.com
cbakewell@mayerbrown.com

Hao Tan (IL Bar No. 6314119)
Shen Wang (IL Bar No. 6314224)
Peter J. Curtin (IL Bar No. 6332596)
Christopher J. Fahy
ARCH & LAKE LLP
203 N. LaSalle St., Ste. 2100
Chicago, IL 60601
Phone: 312-558-1369
Fax: 312-614-1873
HaoTan@archlakelaw.com
ShenWang@archlakelaw.com
pete_curtin@archlakelaw.com
christopher@archlakelaw.com

███████████████████████████

*Attorneys for Defendant Autel Intelligent Technology Corp., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 24th day of July, 2023, with a copy of this document via email per Local Rule CV-5(a)(3).

*/s/ Clark S. Bakewell*
Clark S. Bakewell

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to Local Rule CV-5(a)(7).

*/s/ Clark S. Bakewell*
Clark S. Bakewell